In re BRASHEAR.

(District Court, W. D. Pennsylvania. September 16, 1921.)

No. 9287.

1. **Bankruptcy ⬸360—Creditor's attorney held "duly authorized" to receive and indorse dividend check.**

Where attorney, whose appearance for a creditor has been entered on the record of the referee in bankruptcy, has prepared proof of creditor's claim and procured allowance thereof, he is, under Bankruptcy Act, § 1 (9), being Comp. St. § 9585, the "duly authorized" attorney of the creditor, especially in view of section 58 of such act (Comp. St. § 9642), General Order 4 in Bankruptcy (89 Fed. iv, 32 C. C. A. viii), Form No. 20 in Bankruptcy (89 Fed. xxxvi, 32 C. C. A. lxi), and Judicial Code, § 272 (Comp. St. § 1249), and, hence the receipt and indorsement by such

---

⬸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

attorney of dividend check, payable to creditor's order, is sufficient acquittance to trustee; neither Bankruptcy Act, § 47 (4), being Comp. St. § 9631, nor General Order in Bankruptcy No. 29 (89 Fed. xii, 32 C. C. A. xxviii) requiring that dividend checks shall be made out to attorney's client.

**2. Courts ☞340—State act requiring filing of warrant of attorney not applicable to bankruptcy proceedings.**

Act Pa. April 14, 1834 (P. L. 354) §§ 71, 72, providing that an attorney, when required, shall file his warrant of attorney, has no application to the bankruptcy courts, since such courts follow the practice in equity within Rev. St. U. S. § 914 (Comp. St. 1537), where such practice is not defined by the Bankruptcy Act or the general orders and forms made in pursuance thereof.

In Bankruptcy. In the matter of Harry Bazil Brashear, bankrupt. On certified questions from referee. Questions answered.

H. D. Montgomery, of Pittsburgh, Pa., for bankrupt.

ORR, District Judge. The referee has certified to this court the following question:

"Where a member of the bar of this court has been employed by a creditor of a bankrupt, has prepared the creditor's proof of claim and procured its allowance in the bankruptcy proceeding, and his appearance for the creditor is entered in the referee's record, does such member of the bar remain the agent of the creditor for the purpose of collecting the money due, to the extent that a dividend check issued by the trustee and countersigned by the referee and made out in the name of the creditor and indorsed by such member of the bar with the creditor's name, per the attorney, will constitute an acquittance by the creditor to the trustee in bankruptcy, and to the depository?"

[1] This question must be answered in the affirmative. In support of this conclusion, the Bankruptcy Law (Comp. St. §§ 9585–9656), the general orders and the forms in bankruptcy all not only lend their aid, but compel assent. The member of the bar of this court who has performed the duties assumed in the question in looking after his client's interest up to the time a dividend is declared, and who has caused his name to be entered upon the docket together with his place of business and with the date of the entry, is clearly entitled to receive the dividend.

The definition of "creditor" in the act was not intended to include alone the person who owns a demand or claim in bankruptcy, but was intended also to "include his duly authorized agent, attorney or proxy." Section 1 (9). The words "duly authorized" should not be disturbing in arriving at a conclusion as to the powers of an attorney at law who is a member of this court, so far as he may be concerned for a creditor in bankruptcy proceedings. That such an attorney is "duly authorized" is presumed when he enters his appearance in the proceedings, and such presumption exists until it is overcome by evidence.

General Order 4 (89 Fed. iv, 32 C. C. A. viii) relates to the conduct of proceedings, and is as follows:

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Proceedings in bankruptcy may be conducted by the bankrupt in person in his own behalf, or by a petitioning or opposing creditor; but a creditor will only be allowed to manage before the court his individual interest. Every party may appear and conduct the proceedings by attorney, who shall be an attorney or counselor authorized to practice in the Circuit or District Court. The name of the attorney or counselor, with his place of business, shall be entered upon the docket, with the date of the entry. All papers or proceedings offered by an attorney to be filed shall be indorsed as above required, and orders granted on motion shall contain the name of the party or attorney making the motion. Notices and orders which are not, by the act or by these general orders, required to be served on the party personally may be served upon his attorney."

In that general order there is express provision for the conduct of bankruptcy proceedings by attorneys. The particular requirements with respect to entering upon the docket the attorney's place of business, with the date of the entry, may be noted. The first is required in order that notices and orders may be served upon him. The second fixes the time when his responsibility with respect to the particular proceedings begins. The powers of the attorney for a creditor must have been intended to be broad. Most of the notices provided in the Bankruptcy Law are to be given 10 days before the purpose of the notice may be accomplished. Section 58 provides:

"a. Creditors shall have at least ten days' notice by mail, to their respective addresses as they appear in the list of creditors of the bankrupt, or as afterwards filed with the papers in the case by the creditors, unless they waive notice in writing, of (1) all examinations of the bankrupt; (2) all hearings upon applications for the confirmation of compositions or the discharge of bankrupts; (3) all meetings of creditors; (4) all proposed sales of property; (5) the declaration and time of payment of dividends; (6) the filing of the final accounts of the trustee, and the time when and the place where they will be examined and passed upon; (7) the proposed compromise of any controversy, and (8) the proposed dismissal of the proceedings."

In view of the definition of "creditor" before referred to, in view of the provisions of General Order 4 above set forth, in view of the territorial extent of the United States within which the uniform system of bankruptcy provided by the act of 1898 and its supplements prevails, it cannot be doubted that the notices to be given under section 58 are intended to be given to the creditors according to their respective addresses, and that the word "creditors" includes the attorney who has complied with the rule by having his name and place of business and the date entered upon the docket. If such notices are not to be served upon attorneys, how is it possible for the client in Southern California to act on such short notice with respect to matters in a bankruptcy court in Maine? The fact, then, that the notices contemplated in said section 58 are to be served upon the attorneys who have appeared for creditors and conformed with General Order 4 creates the further inference that the persons upon whom notices are to be served are the persons who are to take part in the proceedings which are intended to be had pursuant to the notices. That is a logical conclusion. That being so, it is apparent that under the Bankruptcy Law the attorneys at law are intended to have very broad powers in the representation of their clients' interests. That

they should have broad powers is more specifically pointed out by reference to the forms in bankruptcy, notably Form No. 20 (89 Fed. xxxvi, 32 C. C. A. lxi). This form was prepared by the Supreme Court in pursuance of direct enactment in the body of the Bankruptcy Law, and it is entitled by the Supreme Court: "General Letter of Attorney in Fact When Creditor is Not Represented by Attorney at Law." Plainly the inference is that, when a creditor is represented by an attorney at law, the latter has all the powers which are intended to be given to an attorney in fact when the creditor is not so represented. The main features of that letter of attorney are as follows:

"To attend the meeting or meetings of creditors of the bankrupt aforesaid at a court of bankruptcy, wherever advertised or directed to be holden, on the day and at the hour appointed and notified by said court in said matter, or at such other place and time as may be appointed by the court for holding such meeting or meetings, or at which such meeting or meetings, or any adjournment or adjournments thereof, may be held, and then and there from time to time, and as often as there may be occasion, for me and in my name to vote for or against any proposal or resolution that may be then submitted under the acts of Congress relating to bankruptcy, and in the choice of trustee or trustees of the estate of the said bankrupt, and for me to assent to such appointment of trustee, and with like powers to attend and vote at any other meeting or meetings of creditors, or sitting or sittings of the court, which may be held therein for any of the purposes aforesaid; also to accept any composition proposed by said bankrupt in satisfaction of his debts, and to receive payment of dividends and of money due me under any composition, and for any other purpose in my interest whatsoever."

There is added to that language a power of substitution, which power has never been recognized as inherent in a member of the bar. This does not tend to diminish the strength of the inference which is derived from that form, because it was never recognized that an attorney at law had any power of substitution, although he has always had power to associate with him one or more members of the bar for whose conduct he has always been deemed responsible.

It is clear, therefore, that the law contemplates that a member of the bar of this court, representing a creditor of the bankrupt, may attend meetings of creditors and vote for or against any proposal or resolution that may be then submitted under the acts of Congress relating to bankruptcy, and in the choice of trustee or trustees of the estate of the bankrupt, and to assent to such appointment of trustee; that he may accept any composition proposed by the bankrupt in satisfaction of his debts and receive payment of dividends and all money due under any composition, etc. Clearly such member of the bar maintains a relation with his client which involves the duty of collecting the money due to his client. In the certified question it appears that the collection of the money due the client is made difficult because the dividend check issued by the trustee and countersigned by the referee is made out to the order of the client. But nowhere in the act is there any provision that dividend checks shall be made to the client and issued to the attorney for the client. Section 47 (4) provides that trustees shall "disburse money only by check or draft on the depository in which it has been deposited." General Order 29 (89 Fed. xii, 32 C. C. A. xxviii) is specific with respect to the manner in which

checks or warrants shall be signed and countersigned and what they shall contain; but there is no provision therein that the name of an attorney's client should be inserted as payee of the check.

Before concluding this opinion, it may be well to note the law in the federal courts with respect to attorneys at law generally. By the General Judiciary Act of September 24, 1789 (1 Stat. 73), it was provided that in all the courts of the United States the parties may plead and manage their own causes personally, or by the assistance of such counsel or attorneys at law as by the rules of said courts respectively are permitted to manage and conduct causes therein. This provision is carried into section 747 of the Revised Statutes and again carried into section 272 of the Judicial Code (Comp. St. § 1249).

In Osborn v. United States Bank, 9 Wheat. 738–830 (6 L. Ed. 204), Chief Justice Marshall had under consideration a contention by the appellants that a decree of the Circuit Court was erroneous because no authority was shown in the record from the bank authorizing the institution or prosecution of the suit. He finds no distinction between cases where an attorney at law represents an individual and where he represents a corporation, and expresses the rule which seems to have been then, and ever since, recognized in the federal court, that the authority of an attorney or counselor to appear in court is not required to be expressed by the filing of his warrant of attorney, in the following language:

"Certain gentlemen, first licensed by government, are admitted, by order of court, to stand at the bar, with a general capacity to represent all the suitors in the court. The appearance of any one of these gentlemen in a cause has always been received as evidence of his authority; and no additional evidence, so far as we are informed, has ever been required. This practice, we believe, has existed from the first establishment of our courts, and no departure from it has been made in those of any state or of the Union."

This case was referred to in Aaron v. United States, 155 Fed. 833–836, 84 C. C. A. 67–70, and the quotation just made is there found. The court also says that Chief Justice Marshall gave expression to a rule "now universally recognized."

[2] Referring to the quotation again, it is to be noted that since Chief Justice Marshall used such language the state of Pennsylvania passed the act of April 14, 1834 (P. L. 354), which in sections 71 and 72 provides that an attorney shall, when required, file his warrant of attorney. Such act, however, has no force or effect in the bankruptcy courts, because the practice, pleadings, and forms and modes of procedure, where not specified in the act itself, or the General Orders or forms in bankruptcy, must be according to practice in equity.

We do not want to be understood, however, as expressing an opinion that the conformity section, 914, of the Revised Statutes (Comp. St. § 1537), which requires the federal court to follow the practice, pleadings, and forms and modes of procedure of the state courts in actions at law, might not include within its operation the Pennsylvania act of 1834.

In view of the foregoing considerations, having in mind all the conditions expressed in the certified question, we are bound to answer the same in the affirmative.