## BAILEY v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. June 7, 1926.)

No. 4754.

1. **Criminal law** ⬅147—**Six-year limitation applies to uttering and publishing of forged indorsement of check to defraud United States (Rev. St. § 1044, as amended by Act Nov. 17, 1921, § 1 [Comp. St. Ann. Supp. 1923, § 1708]).**

Act Nov. 17, 1921, § 1, amending Rev. St. § 1044 (Comp. St. Ann. Supp. 1923, § 1708), providing that "in offenses involving the defrauding or attempts to defraud the United States * * * the period of limitation shall be six years," applies to offense of uttering and publishing forged indorsement of check or draft on United States Treasury with intent to defraud the United States.

2. **Forgery** ⬅6—**Attorney employed to collect claim against United States has implied authority to indorse client's name on draft received in payment, and such indorsement is not forgery (Criminal Code, § 29 [Comp. St. § 10193]).**

An attorney employed to collect a claim against the United States has implied authority to indorse, in the name of his client, a check or draft received in payment, and such act does not constitute a forgery with the purpose or effect of defrauding the United States, within Criminal Code, § 29 (Comp. St. § 10193).

3. **Criminal law** ⬅1044—**Duty of appellate court to reverse conviction, where act was not a crime, though directed verdict not asked.**

If it appears affirmatively from the record that no crime was committed, it is the duty of an appellate court to reverse a judgment of conviction, though no motion was made for directed verdict.

In Error to the District Court of the United States for the District of Arizona; George M. Bourqin, Judge.

Criminal prosecution by the United States against Weldon J. Bailey. Judgment of conviction, and defendant brings error. Reversed and remanded.

John W. Ray, of Phœnix, Ariz. (W. L. Barnum and R. C. Stanford, both of Phœnix, Ariz., of counsel), for plaintiff in error.

Geo. T. Wilson, Asst. U. S. Atty., of Phœnix, Ariz.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. This is a writ of error to review a judgment of conviction under section 29 of the Criminal Code (Comp. St. § 10193). There is no controversy over what we deem to be the controlling facts. Some time prior to April, 1921, one

George Frederick Boland died intestate at Tucson, Ariz., leaving an estate in Pima county, in that state, subject to administration. The only property belonging to the estate having any value or calling for administration was a claim against the United States for compensation of some kind, and a claim for insurance as a soldier. Roy J. Hockrey, a half-brother of the decedent, consulted an attorney residing in Phœnix in reference to these claims, but was informed by the attorney that he could not give proper attention to the matter, as it would take him out of the county. The attorney thus consulted then introduced the half-brother to the plaintiff in error. Pursuant to this introduction, the plaintiff in error was retained and employed to collect the claims in question. He immediately caused the half-brother to be appointed administrator of the estate, and thereafter prosecuted the two claims against the government in the name of the administrator before the proper department or departments. As a result of his endeavors the claim for compensation was allowed in the sum of $190.32, but the claim for insurance was disallowed. Whether the disallowance of the latter was final or not is not material.

A check or draft for the amount of the claim, as allowed, payable by the United States, through its Treasurer, to the order of Hockrey, as administrator of the estate of George Frederick Boland, came into the possession of the plaintiff in error, as attorney for the estate, and the latter indorsed the check or draft in the name of the administrator, adding his own name to the indorsement. He then deposited the check or draft to his own account in the bank. Pursuant to this indorsement the amount of the check or draft was paid by the United States to the bank. This occurred early in the year 1922. The plaintiff in error did not account to the administrator for the money thus collected and received until some time early in the year 1925, when he was called upon by a special agent of the government. The special agent then presented a photostatic copy of the draft or check, and the indorsement thereon by plaintiff in error, and demanded payment. The plaintiff in error admitted that the indorsement was his and paid the amount to the special agent. Later the present indictment, containing two counts, was returned against the plaintiff in error. The first count charges the forgery of the indorsement on the check or draft, for the purpose of receiving from the United States, through its Treasurer, the amount thereof,

and the second count charges the uttering and publishing of the forged indorsement with intent to defraud the United States.

[1] More than three years and four months elapsed between the date of the commission of the offenses charged and the date of the return of the indictment by the grand jury, and because of this lapse of time the plaintiff in error demurred to the indictment and interposed a plea in abatement, based on the three-year statute of limitations. The demurrer and plea were overruled and upon these rulings the first assignment of error is based. The amendment of November 17, 1921, to section 1044 of the Revised Statutes (42 Stat. 220 [Comp. St. Ann. Supp. 1923, § 1708]), contains the following proviso: "Provided, however, that in offenses involving the defrauding or attempts to defraud the United States * * * the period of limitation shall be six years." Under this amendment the six-year period applies to every case in which defrauding the United States is an ingredient of the crime as defined by statute; or, in the language of the Supreme Court, construing the amendment, in United States v. Noveck, 46 S. Ct. 476, 70 L. Ed. ——, decided May 10, 1926: "Its purpose is to apply the six-year period to every case in which defrauding or an attempt to defraud the United States is an ingredient under the statute defining the offense. There are several such offenses. Section 37 (Comp. St. § 10201) affords an illustration." The defrauding of the United States is a statutory ingredient of the crime charged in the second count of the indictment, at least, and there was therefore no error in the rulings complained of.

[2] The next and only remaining assignment of error is based on the insufficiency of the testimony to support the verdict and judgment. No testimony was offered at the trial tending to show an express authorization to make the indorsement in question. Nor was there any testimony tending in any way to limit or restrict the implied authority arising from the contract of employment and the relationship of the parties. If, therefore, express authority was needed, the question whether the plaintiff in error was vested with such authority, or honestly though mistakenly, believed that he had such authority, was for the jury. On the other hand, if the plaintiff in error had implied authority to indorse the check or draft arising out of his employment, there was no forgery of the indorsement, no uttering or publishing of the forged indorsement, and no offense against the laws of the United States,

whatever crime may have been committed against the laws of the state.

We think the latter view is the correct one. The plaintiff in error was employed as an attorney to collect certain claims against the government; he had undoubted authority to receive payment in cash or money, and, having received instead a check payable to his client, under the great weight of authority he had implied authority to indorse and cash the check. Thus, in Re Brashear (D. C.) 275 F. 481, a dividend check was issued on the depository by a trustee in bankruptcy, countersigned by the referee, and made payable to the creditor, and it was held that an indorsement of the check by the attorney for the creditor in the name of the creditor constituted an acquittance by the creditor to the trustee in bankruptcy and to the depository.

In Brown v. Grimes, 74 Ind. App. 655, 129 N. E. 483, the court said: "It is a well-established rule of law that an attorney who has a claim for collection has no right, in the absence of special authority, to accept in settlement anything but money. This rule is made the law in this state by statutory enactment. * * * Under this rule, appellant's said attorney had no authority to receive the check as payment, nor could he by his indorsement impose a new contract liability upon appellant, who was his client; but, having taken the check in due course of his employment, he had implied authority to make a formal indorsement in behalf of his client for the purpose of making the collection and receiving the money. Having by indorsement of the check received the money thereon, Underwood had by this means effected the purpose for which he had been employed. He had collected, and had in his possession for appellant, in money, the full amount of the judgment he had been employed to collect. We therefore hold that the acceptance and indorsement of the check by appellant's attorney, and the receipt by said attorney of the proceeds of such check, under the peculiar facts of this case, amounted to a payment of the judgment. The conclusion we have reached is in accordance with the great weight of authority"—citing many cases. See, also, National Bank v. Old Town Bank, 112 F. 726, 50 C. C. A. 443; National Fire Ins. Co. v. Eastern Building & Loan Ass'n, 63 Neb. 698, 88 N. W. 863.

Should a suit be instituted against the government to recover the amount of the check or draft, we have little doubt that the paid check or draft, indorsed as it is, would constitute a full and complete defense.

[3] We are, of course, aware that there was no request for an instructed verdict at the close of the testimony, as suggested by counsel; but if there is no competent testimony to support the verdict of guilty, and more especially if it appears affirmatively that no crime has in fact been committed, the right and duty of this court to order a reversal is not open to question.

The judgment of the court below is therefore reversed, and the cause is remanded for a new trial.